**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **BLU PRODUCTS, INC. and** | § | |
| **CT MIAMI, LLC** | § | |
| | § | |
| *Plaintiffs,* | § | **Civil Action No. 2:17-cv-458** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **LG ELECTRONICS, INC., LG** | § | |
| **ELECTRONICS ALABAMA, INC. and** | § | |
| **LG ELECTRONICS MOBILECOMM** | § | |
| **U.S.A., INC.,** | § | |
| | § | |
| *Defendants.* | § | |

## COMPLAINT

Plaintiffs, BLU Products, Inc. and CT Miami, LLC (collectively, "BLU"), sue Defendants, LG Electronics, Inc., LG Electronics Alabama, Inc., and LG Electronics MobileComm U.S.A., Inc. (collectively, "LGE" unless otherwise indicated), and allege:

### Nature of Action

1.      This is an action for injunctive relief and damages for Defendants' breach of their contractual commitments to the European Telecommunications Standards Institute ("ETSI") and its members, affiliates and adopters.

2.      LGE and/or its relevant predecessors are participants in the ETSI and other 2G, 3G, and 4G standards bodies (collectively, "ETSI"), which are standards-setting bodies responsible for standardization of information and communication technologies for the benefit of ETSI members and third parties.

3.      To facilitate its standard setting activity, ETSI promulgated an Intellectual Property Rights ("IPR") policy, set forth in Annex 6 of its Rules of Procedure, a copy of which is

attached as Exhibit 1.  Under ETSI definitions, the term "IPR" is defined to include patent applications as well as issued patents:

> "IPR" shall mean any intellectual property right conferred by statute law including applications therefore other than trademarks.

Clause 4 of the policy requires, among other things, that members timely disclose to the organization any IPR they own that may be essential to standards that have been developed or are being developed.

4.      Clause 6 of ETSI's IPR policy governs the availability of licenses to essential IPR. In relevant part, Clause 6.1 states:

> When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and nondiscriminatory [FRAND] terms and conditions under such IPR to at least the following extent:
>
> • MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;
>
> • sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;
>
> • repair, use, or operate EQUIPMENT; and
>
> • use METHODS.

5.      ETSI's IPR Policy was designed to benefit all ETSI members, as well as all other parties that implement an ETSI standard, including but not limited to BLU.   In particular, the stated objective of the policy, described in Clause 3.1, is to "reduce the risk" to those implementing the standards or other technical specifications "that investment in the preparation, adoption and application of the STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or TECHNICAL SPECIFICATION being unavailable."

6.      Accordingly, as a participant in ETSI and to comply with ETSI's IPR Policy, LGE and/or its predecessors represented to ETSI, ETSI members, and third parties it would grant irrevocable licenses to the Alleged Standard Essential Patents on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions.

7.      In fact, LGE, and/or its predecessors, declared in Licensing Declarations, attached hereto as Composite Exhibit "2," that it would comply with ETSI's IPR policy for the Alleged Standard Essential Patents and "grant irrevocable licenses under this/these IPR(s) on terms and conditions which are consistent with Clause 6.1 of the ETSI IPR Policy," creating an express and/or implied contract with ETSI and/or ETSI members including an agreement that Complainants and/or their predecessors would license those patents on FRAND terms and conditions. Under ETSI's IPR Policy, third parties that are not ETSI members also have the right to be granted licenses under those patents on FRAND terms and conditions.  When a patent is declared as a Standard Essential Patent, the commitments made with regard to the declared patent are permanent, and cannot be revoked by sale of the patent.

8.      LGE breached its obligation to ETSI and its members, affiliates and adopters including Blu by refusing to offer to BLU a license that is consistent with the ETSI's requirements of fair, reasonable and non-discriminatory terms.

9.      Defendants' breach of their commitments does not depend on whether any patents which Defendants have identified in relation to standards are, in fact, "essential" to practicing those standards, whether those standards can be practiced in ways that do not infringe the identified patents or whether BLU has infringed any valid patents allegedly owned by Defendants. Because Defendants promised to license any such patents on fair, reasonable and non-discriminatory terms, companies that rely on those commitments are entitled to avoid becoming embroiled in patent controversies and to receive the benefit of an offer of a fair, reasonable and non-discriminatory license.

10.      Accordingly, BLU seeks: (a) a judicial declaration that Defendants have breached their obligations to ETSI and its members, affiliates and adopters by failing to offer BLU FRAND licensing prior to instituting a proceeding in the U.S. International Trade Commission ("ITC") and thereafter by refusing to negotiate a license on FRAND terms and demanding excessive and discriminatory royalties from BLU; (b) a preliminary and permanent injunction, enjoining Defendants from enforcing any exclusion order or other injunctive relief that issues from the ITC; (c) a judicial decree that if Defendants' fail to offer BLU a license on FRAND terms and conditions results, Defendants' patents are unenforceable as to BLU and its products; and (d) a judicial determination of and compensation for Defendants' breach and other wrongful acts.

**The Parties**

11.      Plaintiff, BLU Products is a United States corporation organized under the laws of Delaware with its principal place of business at 10814 NW 33rd Street, No. 100, Doral, Florida 33172, United States.

12.      Plaintiff, CT Miami is a United States limited liability company organized under

the laws of Florida and headquartered at 10814 NW 33rd Street, No. 100, Doral, Florida 33172, United States.

13.     Defendant, LG Electronics, Inc., is incorporated under the laws of South Korea with its principal place of business at LG Twin Towers 20, Yeouido-dong, Yeongdeunspo-gu, Seoul 150-721, South Korea. This Defendant does business in the State of Texas, directly and/or through its wholly owned subsidiary, LG Electronics U.S.A., and in the Eastern District of Texas, and has purposely availed itself of the privileges and benefits of this District.  Upon investigation, LG Electronics, Inc. has initiated patent litigation in this District eight (8) times and has defended such litigation 135 times, often seeking affirmative relief in this District by filing counterclaims.

14.     Upon information and belief, Defendant, LG Electronics Alabama, Inc., is wholly owned subsidiary of LG Electronics U.S.A., which is a wholly owned subsidiary of LG Electronics, Inc., and is incorporated under the laws of Alabama, with its principal place of business at 201 James Record Road, Huntsville, AL 35824.  LG Electronics Alabama, Inc. is authorized to do business in Texas and has appointed a registered agent in this State.

15.     Upon information and belief, Defendant, LG Electronics MobileComm U.S.A., Inc., is wholly owned subsidiary of LG Electronics U.S.A., which is a wholly owned subsidiary of LG Electronics, Inc., and is incorporated under the laws of California, with its principal address at 1000 Sylvan Ave., Englewood Cliffs, NJ 07632.  LG Electronics MobileComm U.S.A., Inc. is authorized to do business in Texas and has appointed a registered agent in this State.

**Jurisdiction and Venue**

16.     This Court has jurisdiction over the subject matter of this dispute pursuant to 28

U.S.C. § 1332(a)(2)(3), because this is an action between citizens of different states and citizens

of a state and a citizen or subject of a foreign state, and because the value of declaratory and

injunctive relief sought, the value of BLU's rights this action will protect and enforce, and the

extent of the injury to be prevented exceed the amount of $75,000, exclusive of interest and

costs.

17.     Defendants are subject to this Court's personal jurisdiction because they conduct

business in and have continuous and systematic contacts with the State of Texas in this District.

18.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a) – (d).

**Background Facts**

**A.     LGE failed to identify any specific patent allegedly infringed by BLU and to propose FRAND licensing terms prior to filing a proceeding before the ITC, seeking an exclusion order.**

19.     BLU sells certain LTE wireless communication devices and components thereof,

including mobile phones, that practice industry standard LTE telecommunications technology.

20.     In March 2016, LGE began making illusory overtures to BLU to license BLU's

mobile devices on undisclosed and unspecified FRAND terms.  By letter dated March 31, 2016,

LGE notified BLU that LGE "owned thousands of patents that are essential to many standards"

and that "many of BLU Mobile Devices . . . include functionalities and features that implement

LGE Patents."  However, LGE failed to identify the five (5) patents specifically at issue in the

ITC Complaint.  Moreover, LGE did not offer any terms for the licensing of any specific patent

or the five patents at issue, instead suggesting a general willingness to license BLU's technology

on FRAND terms.  (Ex. "3").   Although LGE followed up with additional letters to BLU,

including providing a claims chart which included about 20 patents (not including all five

patents at issue) without any reference to any specific BLU product, at no time did LGE identify

the five patents that it now contends are infringed BLU products or offer any terms for licensing any specific LGE patent.   (Composite Ex "4")  Indeed, based upon this communication from LGE, BLU could not ascertain what specific patents and what specific products, if any, LGE believed were involved in any alleged infringement.

21.    In fact, LGE never identified a specific patent it owned that it contended was infringed by BLU's products before filing proceedings in the United States International Trade Commission to exclude BLU's importation of its mobile phones.

22.    On April 26, 2017, based upon a complaint filed by the Defendants against BLU, the United States Trade International Trade Commission ("ITC") instituted an investigation pursuant to Section 337 of the Tariff Act of 1930 (19 U.S.C. 1337) in the matter of *Certain LTE Wireless Communication Devices and Components Thereof,* No. 337-TA-1051 ("ITC Complaint").  A copy of the Notice of Investigation is attached as Exhibit "5."    In its ITC Complaint, LGE finally identified the patents and claims it contends are infringed by BLU's products: U.S. Patent No. 7,916,714, U.S. Patent No. 8,107,456, U.S. Patent No. 9,191,173, U.S. Patent No. 9,225,572, U.S. Patent No. 8,891,560 (collectively, "Patens-In-Suit").

23.    As admitted and verified by LGE in its ITC Complaint, each of the five patents alleged to be infringed by BLU is essential to European Telecommunications Standards Institute's ("ETSI") 3GPP LTE standard wherein LGE has committed to license the patents on FRAND terms and conditions.  (Verified ITC Complaint at ¶6).  Furthermore, LGE asserted that it has previously licensed its patents to other third-party users. *Id.*

24.    On the same date LGE filed the ITC Complaint, it filed a Complaint in the United States District Court for the District of Delaware, alleging infringement of the Patents-In-Suit and seeking both damages and injunctive relief.   Pursuant to 28 U.S.C §1659, that action has

been mandatorily stayed until the determination of the ITC becomes final.

**B. Once LGE identified the patents it contends are infringed by BLU's products in the ITC proceedings, it continued to refuse to negotiate FRAND licensing terms and conditions as required by its commitments to ETSI.**

25.     Once BLU had notice of the specific patents and claims that it was accused of infringing, it immediately began to attempt to negotiate a FRAND license with LGE for those patents.  It advised LGE of its willingness to immediately meet to negotiate licensing terms. (Letter dated May 11, 2017 from Barry Golob to Anand Sharma, Ex. "6")

26.     Although LGE indicated its willingness to meet to negotiate FRAND licensing terms as required by its obligations to ETSI and even proposed terms in advice of the meeting, LGE refused on multiple occasions to provide the terms of its licenses with other third-parties, even though BLU had signed a non-disclosure agreement and was subject to a protective order entered by the ITC.

27.     After receiving LGE's refusal to informally provide the requested information, BLU, through its counsel, asked LGE to reconsider its refusal to provide this information regarding past licensing and then requested this information through a formal discovery request in order to determine whether any proposed licensing terms are fair, reasonable and non-discriminatory as required by LGE's commitment to ETSI and third-parties who use the standard technology. (Letter dated May 19, 2017 from Barry Golob to Anand Sharma, Ex. "7")

28.     Again, however, prior to the meeting, LGE once more refused to provide the information, even in response to formal discovery requests, regarding the terms under which third-party licensees agreed to take licenses so as to ascertain if the terms being offered to BLU by LGE meet LGE's FRAND obligations.  Blu even offered to accept these licenses in a redacted format and on an outside counsel only basis in order to have access.  (Letter dated May

29, 2017 from Anand Sharma to Barry Golob, Exhibit "8")

29.     Such information regarding the terms that third-party licensees agreed to with LGE is essential to BLU, seeing as though BLU sells its phones at only a fraction of the price as other third-party licensees, at only a fraction of the volume of other third-party licensees, and typically only in underdeveloped countries whose populations cannot afford the cost of other third-party licensee's phones.

30.     Notwithstanding LGE's failure to meet its obligations to provide necessary licensing information to evaluate FRAND licensing terms, BLU nevertheless agreed to travel to Washington, D.C. to meet with LGE to attend a presentation that LGE insisted on providing and to discuss FRAND terms and conditions.

31.     The meeting occurred earlier today on May 30, 2017 in Washington, DC.

32.     At the meeting, in disregard of the commitments and obligations LGE made to ETSI and its members, affiliates and adopters, LGE refused to disclose any third-party licenses and refused to extend to BLU a license consistent with Defendants' promises for their patents that they identified as "essential" to LTE connectivity.

33.     Instead, LGE offered to license its allegedly "essential" patents to BLU under only unreasonable and discriminatorily exorbitant terms. LGE has thus unreasonably and discriminatorily targeted BLU's products for the purpose of extracting unreasonable royalties from BLU.

34.     All conditions precedent to this action have occurred or have been excused.

### COUNT I (Breach of Contract)

35.     BLU realleges and incorporates by reference the allegations set forth in the foregoing paragraphs 1- 34.

36.     Defendants entered into express or implied contractual commitments with ETSI and its members, affiliates and adopters relating to the LTE standard.

37.     Each third party that would potentially implement the LTE technology was an intended beneficiary of those contracts.

38.     Defendants were contractually obligated, among other things, to offer a license to their identified patents consistent with the applicable patent policy of the ETSI Policy and LGE's Licensing Declarations.

39.     Defendants breached their contract, *inter alia*, by refusing to offer licenses to the to the Patents-in-Suit or other identified standard essential patents under fair and reasonable rates, with reasonable terms, and on a non-discriminatory basis and/or by requiring and conditioning that BLU also agree to license LGE's non-standard/non-essential patents on exorbitant terms.

40.     Defendants further breached these contracts by filing patent infringement actions in the ITC and in the District Court seeking to enjoin BLU's implementation of the technology of the allegedly "essential" patents and to exclude BLU from, among other things, importing or selling products that implement such technology. To the extent this technology is actually necessary to implementation of the relevant standards as Defendants have verified, Defendants were obligated to offer licenses to BLU on FRAND terms.

41.     As a result of Defendants' contractual breaches, BLU has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

42.     BLU will suffer irreparable injury by reason of the acts, practices, and conduct of Defendants alleged above until and unless the Court enjoins such acts, practices, and conduct.

43.     Among other things, BLU is entitled to a preliminary and permanent injunction prohibiting Defendants from enforcing any ITC order that may issue to the Patents-in-Suit or any other allegedly "essential" patents against BLU, or from excluding BLU from implementing the technology allegedly embodied in those patents.

**COUNT II  (Declaratory Judgment that Defendants Must Offer BLU a FRAND License or That The Alleged "Essential" Patents Are Unenforceable As to BLU)**

44.     BLU realleges and incorporates by reference the allegations set forth in the foregoing paragraphs 1 through 34.

45.     Defendants expressly stated in their declarations to ETSI that they would license their patents which it identified as essential to LTE under fair, reasonable rates and non-discriminatory terms.

46.     There is a dispute and controversy between the parties concerning whether Defendants have offered to license to BLU patents consistent with Defendants' declarations and the referenced policy of the ETSI.

47.     The dispute is of sufficient immediacy and reality to warrant the issuance of preliminary injunctive relief, and thereafter a declaratory judgment.

48.     BLU is entitled to a declaratory judgment that Defendants have not offered license terms to BLU regarding, *inter* alia, the Patents-in-Suit on terms consistent with Defendants' declarations and the referenced policy of the ETSI.

49.     Because Defendants have refused to offer a license on FRAND terms to BLU, BLU is further entitled to a declaratory judgment that any Order issued by the ITC or any other tribunal or court is not enforceable.

50.     BLU is further entitled to a declaratory judgment that if Defendants refuse to offer a license on RAND terms, the allegedly "essential" patents, including but not limited to the

Patens-in-Suit, shall be unenforceable as to BLU.

## PRAYER FOR RELIEF

WHEREFORE, BLU prays for relief as follows:

A.      Adjudge and decree that Defendants are liable for breach of contract;

B.      Decree that BLU is entitled to license any and all patents that fall within Defendants' commitments to the ETSI in relation to LTE technology, including the Patents-In-Suit, on a non-discriminatory basis on fair and reasonable terms and conditions;

C.      Enjoin Defendants preliminarily and permanetly from further demanding excessive royalties, and/or licenses on non-standard essential patents, from BLU that are not consistent with Defendants' FRAND obligations, and from enforcing, or seeking to enforce, patent infringement claims in the ITC (or elsewhere) in breach of their FRAND obligations as alleged above;

D.      Decree that if Defendants refuse to offer BLU a license on a non-discriminatory basis on fair and reasonable terms and conditions, that Defendants' patents are unenforceable as to BLU and its products;

E.      Enter judgment against Defendants for the amount of damages that BLU proves at trial;

F.      Enter a judgment awarding BLU its expenses, costs, and attorneys' fees in accordance with Rule 54(d) of the Federal Rules of Civil Procedure; and

G.      For such other and further relief as the Court deems just and proper.

Dated: May 30, 2017

Respectfully submitted,

By: /s/ *William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
**THE DAVIS FIRM, PC**
213 N. Fredonia, Suite 230
Longview, TX  75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9660
Email: bdavis@davisfirm.com

Kerry B. McTigue
Barry P. Golob
**COZEN O'CONNOR**
1200 Nineteenth Street, N.W.
Washington, DC  20036
Telephone: (202) 912-4800
Facsimile: (202) 861-1905
Email: kmctigue@cozen.com
         bgolob@cozen.com

James A. Gale, Esq.
**COZEN O'CONNOR**
One Biscayne Tower, Suite 3000
Miami, FL 33131
Telephone: (305) 358-5001
Facsimile: (305) 704-5955

*Attorneys for Plaintiffs*
*Blu Products, Inc. and*
*CT Miami, LLC*